IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SOUTHWEST AIRLINES CO., <br><br> Plaintiff, <br><br> v. <br><br> INFARE SOLUTIONS A/S, and CHRISTOPHER J BUCKINGHAM, <br>         Defendants. | CIVIL ACTION NO. <br><br> JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiff Southwest Airlines Co. files this complaint in order to protect its valuable property and online distribution system from the unauthorized activities of Defendants Infare Solutions A/S, and Christopher J. Buckingham. Based upon actual knowledge with respect to itself and its own acts, and upon information and belief as to other persons and matters, Southwest alleges as follows:

### Nature of the Action

1.      This is a suit to stop computer fraud, abuse, cyber-trespass and other wrongful conduct by online profiteers. Southwest seeks to stop the commandeering of its online fare data and fare distribution system by for-profit companies in the U.S. and abroad. Defendants develop, manufacture, use, sell, or license software that includes or captures valuable online fare, scheduling, route, and availability data that has been improperly obtained from Southwest, without its consent. These activities are conducted for the purpose of profiting from Southwest's proprietary information. Southwest has no choice but to seek protection from this Court to

protect its valuable property, goodwill, reputation, and business and to ensure that its website remains a secure and valuable environment for customer transactions.

## Parties

2. Plaintiff Southwest Airlines Co. is a Texas corporation with its principal place of business in this District, at 2702 Love Field Drive, Dallas, Texas.

3. Defendant Infare Solutions A/S is a Danish corporation with its principal place of business in Denmark, at Groennegade 18, 1st Floor, Copenhagen, Denmark-1107.

4. Defendant Christopher J. Buckingham is a resident of the State of Washington, at 7438 Heather Ave SE, Snoqualmie, Washington 98065.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over the federal statutory claim in this action pursuant to 28 U.S.C. § 1331.

6. This Court also has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

7. This Court has supplemental jurisdiction over the claims in this Complaint that arise under the laws of the State of Texas pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

8. This Court has personal jurisdiction over Infare Solutions A/S because it is a foreign or domestic corporation that committed torts in this District, breached a contract entered into in this District, violated Texas statutory law in this district, and systematically did, and still

does, conduct business in this District. The injuries Infare inflicts on Southwest are felt in this District, and Infare knew that serious harmful effects from its conduct would occur here.

9. This Court has personal jurisdiction over Christopher J. Buckingham because he is a Washington resident who has intentionally committed acts that were aimed to cause tortious injury within this District. The injuries Christopher J. Buckingham inflicts on Southwest as a result of his unlawful conduct are felt in this District, and he knew that serious harmful effects from his conduct would occur here.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. The claims asserted in this action arose in this District and a substantial part of the activities, conduct and damages have occurred in Texas.

11. Venue is also proper in this Court because Defendants direct commercial activity to residents of Texas, including residents of this District. Defendants intend to and will continue to market, advertise, and sell airline transportation-related products or services to residents in this District.

## Facts Giving Rise to This Action

### A. Southwest's Operations

12. Southwest is the only major, short-haul, low-fare, high-frequency, point-to-point air carrier in the United States. Southwest is headquartered in Dallas and conducts substantial business operations throughout Texas.

13. Southwest began service in 1971 with three jets serving Houston, Dallas, and San Antonio and has since grown into the fourth largest airline in the country. In the highly competitive and sometimes tumultuous airline industry, Southwest had maintained thirty

consecutive years of profitability. This success is due not only to Southwest's low fares, but also to its commitment to customer service.

14. In the more than thirty years that Southwest has been offering air transportation services, it has developed a substantial amount of goodwill with its customers by establishing itself as a customer-focused, low fare airline.

**B.     Southwest's Online Customer Service**

15. In order to maintain its valuable reputation as a low-fare airline and to keep ticket prices low for its customers, Southwest relies on the Internet to conduct a substantial portion of its business. In fact, Southwest was the first airline in the country to establish an informational and then interactive site on the World Wide Web accessible to the traveling public.

16. Since 1994, Southwest has developed and maintained a privately-owned computer system located in this District, which includes the Southwest.com and SWABiz.com websites and numerous supporting servers, databases, routers, networks, bandwidth, cabling, appliances, switches, filers and firewalls (the "Southwest Websites"). Through the Southwest Websites, Southwest provides proprietary fare, route, schedule, and availability data to its actual and potential customers in an interactive format. Southwest has invested substantial time and money in developing, compiling and maintaining its proprietary computer system and website, and the fares contained in it.

17. Southwest strives to provide its customers with the same friendly, unique "Southwest Experience" on the Internet that it provides in all its operations, from the moment a customer accesses the Southwest Websites to the moment he or she leaves the airport at the end of a trip. Southwest strives to make the Southwest Websites user-friendly and to display its fares quickly, conveniently, accurately, and in a way that conveys the full breadth of Southwest's fares,

even those that are not available for a particular itinerary. To preserve its standards of customer service, reputation, and goodwill, Southwest has chosen the Southwest Websites as the only sites on which it distributes its fares.

18. In the current online environment, it is particularly important for businesses like Southwest to ensure that their websites are secure. Numerous Internet scams, "phishing" schemes, breaches of financial databases, and harmful computer viruses have eroded consumer confidence in electronic commerce which affects online businesses, including Southwest.

19. Southwest makes its computer system, websites and the proprietary contents thereof available to consumers subject to certain terms and conditions of use that make it clear that the system and data displayed thereon is proprietary and owned by Southwest (the "Use Agreement"). The Use Agreement is referenced by interactive link on each page of the Southwest Websites. It provides the terms and conditions under which users may access and use the Southwest Websites.

20. The Use Agreement expressly prohibits the use of the Southwest Websites for commercial purposes. It also prohibits use of any "deep-link," "page-scrape," "robot," "spider" or other automatic device to "access, acquire, copy, or monitor any portion of the Southwest Airlines Sites." The Use Agreement is available in text and also posted in robots.txt, a code that robots or other automatic devices read upon attempting to access a website.

21. The Use Agreement for the Southwest Websites also states:

> Information concerning Southwest and its services, including flight schedules, routes, fares, text, graphics, button icons, audio and video clips, digital downloads, data compilations (including Customer and Rapid Rewards information), logos and information regarding the status of Southwest flights, etc. is referred to as "Company Information." Southwest owns all copyrights, trademarks, service marks, and trade names related to the Company Information and the Company Information is proprietary to Southwest.

22. Southwest's opposition to scraping, or any unauthorized access of its websites is well known, as it has had to resort to litigation to stop scrapers in the past. *See Southwest Airlines Co. v. Boardfirst LLC*, 2007 WL 4823761 (N.D.Tex); *Southwest Airlines Co. v. FareChase, Inc.*, 318 F.Supp.2d 435 (N.D.Tex. 2004); and *Southwest Airlines Co. v. QL2 Software, Inc.*, civil action number 3:05-cv-01558.

**C.    Defendants' Wrongful Conduct**

23. Infare obtains Southwest's proprietary data though a variety of means. For example, Infare, through the use of software and other tools, sends out electronic robots, spiders, or other automated scraping devices across the Internet to enter and search targeted airline industry websites, including the Southwest Websites, and extracts proprietary fares and other related flight information from the websites.

24. Infare describes its scraping device as an analyzing tool intended to provide airlines with essential market intelligence needed in order to decode hidden conditions and get information on airfares not available elsewhere. Defendants have advertised that their products scrape fares from Southwest, and have provided their software and scraped data to companies in the travel industry.

25. Christopher J. Buckingham does business as Infare Solutions Americas and markets and sells Infare's software, scraped data, and/or scraping products to clients located in the United States. Mr. Buckingham actively advertises Infare's product as including Southwest fare data knowing that Southwest objects to such activity.

26. Christopher Buckingham was previously the President and Chief Executive Officer of QL2 Software, Inc. ("QL2") which is a competitor of Infare and was previously

involved in litigation with Southwest for scraping proprietary flight information. Mr. Buckingham knew of the lawsuit and was actively involved in the litigation between Southwest and QL2 until he left QL2 in December 2006. Even after his departure, Mr. Buckingham remained informed on the litigation and knew of QL2's settlement with Southwest, in which QL2 agreed not to access the Southwest Websites.

27. Infare's scraping is intensive, invasive and causes substantial traffic through the Southwest Websites, all while Infare has no intention of booking tickets for travel or becoming Southwest customers. Rather, Infare scrapes and then sells or otherwise redistributes Southwest fare data for its own commercial gain. Infare's activities and use of Southwest's property is intentional and knowingly done without Southwest's consent and in violation of the Use Agreement.

28. The unauthorized use of and intermeddling with the Southwest Websites uses valuable computer capacity. To the extent that Infare uses the Southwest Websites' capacity, it deprives Southwest of its ability to possess and use that capacity to serve legitimate customers. If not stopped, Infare's scraping will increase, which could diminish response times and impair the functioning of the Southwest Websites. This could force Southwest to allocate funds to pay for increased computer support and capacity, in effect subsidizing Infare's commercial commandeering of the website. Infare's screen-scraping also frustrates Southwest's ability to evaluate and manage its business.

29. Neither Infare nor Christopher Buckingham has any business relationship with Southwest. Further, Southwest does not endorse or approve of Infare's products or services. Infare's access and use of the Southwest Websites is without authorization and in violation of the Use Agreement. Defendants, however, trade off of Southwest's goodwill, reputation and the

value of its services to the traveling public, likely giving Defendants' customers or potential customers the false impression that there is a business relationship between Southwest and Infare.

30. Infare's scraping and selling of Southwest's fare data also causes substantial harm to Southwest's business. In particular, Infare and Christopher Buckingham facilitate and intend for their customers to use Southwest's fare data and other flight information, wrongfully obtained by Infare's unlawful scraping, to alter their competitive strategies and shift market share, business, revenue, and profits from Southwest.

31. Southwest has spent significant resources in attempting to technologically block screen-scrapers from accessing the Southwest Websites. Some scrapers, however, including Infare's, have evaded these website protection measures by "masking," "aliasing," disguising," or otherwise hiding their identities when they scrape the Southwest Websites. These masking tactics make it difficult or impossible for Southwest to detect the full extent of Infare's unauthorized access to Southwest's valuable property.

32. In particular, in accessing the Southwest Websites to scrape fare data, Infare disguises its identity by indicating that its software robots originate from sources other than those associated with Infare. Southwest would be better able to block access to the Southwest Websites if it knew which searches of its websites were actually Infare's activity, as opposed to legitimate Southwest customers. However, because Southwest, through its computer system, relies on Infare's misrepresentation as to the identity or origin of fare searches, Infare is able to access the Southwest Websites and scrape Southwest's fares. All of this is to Southwest's detriment, as described elsewhere in this Complaint.

33. Southwest's proprietary fares and its website resources have substantial commercial value. Therefore, it is highly probable that—in the absence of an injunction

prohibiting Defendants' unauthorized conduct—even more companies will target and use the Southwest Websites for their own business purposes, without Southwest's consent and to its detriment.

34. Infare's and Christopher Buckingham's conduct is intentional, and it is based on a business plan that disregards the rights of owners of targeted websites, including Southwest. Southwest has informed Infare and Mr. Buckingham of their unlawful conduct and Southwest's opposition to their activities. Additionally, Christopher Buckingham has known about Southwest's prohibition against unauthorized access of its computer systems since at least 2005, as described above.

### First Cause of Action
### (Computer Fraud and Abuse in Violation of 18 U.S.C. § 1030)

35. Plaintiff repeats and realleges the allegations in the preceding paragraphs.

36. Southwest has suffered loss of at least five thousand dollars ($5,000) in value during a one-year period.

37. Infare intentionally accesses protected Southwest computers without authorization or exceeds authorized access and obtains information from a protected computer.

38. Alternatively, Infare knowingly and with intent to defraud, accesses protected Southwest computers without authorization, or exceeds authorized access, and by means of that conduct furthers its intended fraud against Southwest as alleged elsewhere in this Complaint. Infare has obtained value, in excess of five thousand dollars ($5,000) in a 1-year period, from the unauthorized use of Southwest's computers. In addition, Infare also obtains value beyond the use of the Southwest's computers by obtaining Southwest's proprietary fare data.

39. Alternatively, Infare (i) knowingly causes the transmission of a program, information, code, or command, and intentionally causes damage, without authorization, to protected Southwest computers; (ii) intentionally accesses a protected computer without authorization, and as a result recklessly causes damage; or (iii) intentionally accesses a protected computer, without authorization, and as a result causes damage and loss.

40. Under 18 U.S.C. § 1030(g), Southwest is entitled to compensatory damages and injunctive or other equitable relief.

### Second Cause of Action
### (Violation of Texas Penal Code § 33.02)

41. Plaintiff repeats and realleges the allegations in the preceding paragraphs.

42. Infare knowingly, and without Southwest's effective consent, accesses Southwest's computers, computer network or computer system.

43. Southwest, and its property, has been and will continue to be damaged as the result of Infare's violation of the Texas Penal Code.

44. Pursuant to § 143.001 of the Texas Civil Practice and Remedies Code, Infare's knowing and intentional violation of Texas Penal Code § 33.02 makes Infare liable for the harmful access of the Southwest Websites.

45. Southwest has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Infare. Accordingly, Southwest is entitled to injunctive relief and damages.

### Third Cause of Action
### (Breach of Southwest's Use Agreement)

46. Southwest repeats and realleges the material facts in the preceding paragraphs.

47. The Use Agreement is a valid and enforceable agreement binding on Infare.

48. Upon Infare's use of the Southwest Websites, it agreed to be bound by the terms of the Use Agreement.

49. By accessing the Southwest Websites, including Infare's use of robotic scraping devices to extract fare information for commercial purposes and gain, without authorization by Southwest, Infare has breached the terms and conditions of the Use Agreement.

50. Southwest has been and will continue to be damaged as the result of Infare's breach of the Use Agreement.

51. In addition, Southwest has suffered and will continue to suffer irreparable harm and its remedy at law is not itself adequate to compensate it for injuries inflicted by Infare. Accordingly, Southwest is entitled to injunctive relief and damages.

### Fourth Cause of Action
### (Trespass)

52. Southwest repeats and realleges the material facts in the preceding paragraphs.

53. Infare has intentionally, and without authorization, accessed the Southwest Websites. Access to the Southwest Websites and the proprietary information contained in them is granted only to those users who abide by the terms and conditions of the Use Agreement. By disregarding the terms and conditions of the Use Agreement Infare has unlawfully gained access to and interfered with Southwest's private property.

54. Infare has used the Southwest Websites' capacity without permission to enrich its business, depriving Southwest of its own resources. If not stopped, Infare will continue and potentially increase its activities and perpetuate the risk that the Southwest Websites will experience malfunctions and be unable to properly provide service to legitimate customers of Southwest.

55. Infare's intentional and unauthorized access of the Southwest Websites has injured or interfered with Southwest's possession of its personal property.

56. Southwest has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants. Accordingly, Southwest is entitled to injunctive relief.

### Fifth Cause of Action
### (Civil Conspiracy)

57. Southwest repeats and realleges the material facts in the preceding paragraphs.

58. Infare and Christopher Buckingham act in concert to utilize Infare's software and improperly obtained data for the purpose for which it was intended: to provide Southwest's proprietary content to third parties to further Infare's and Chris Buckingham's own commercial purposes.

59. The unauthorized access and use of the Southwest Websites to extract and distribute Southwest's fare information by Defendants is unlawful in a number of ways, including as outlined elsewhere in this Complaint.

60. Infare and Christopher Buckingham have acted pursuant to a business plan which includes obtaining and subsequently selling or otherwise providing Southwest's proprietary information to Infare's customers.

61. Infare and Chris Buckingham have intentionally focused their scraping activities at Southwest in order to obtain Southwest fare data and other flight information. Further, Infare and Christopher Buckingham have marketed Infare's products as including Southwest fare data for their own commercial benefit.

62. Southwest has been and continues to be injured by Defendants' unlawful acts and is entitled to damages.

### Sixth Cause of Action
### (Fraud)

63. Southwest repeats and realleges the material facts in the preceding paragraphs.

64. Infare has purposefully misrepresented its identity to Southwest and the Southwest Websites in order to gain unauthorized access to Southwest's proprietary fare data and other flight information.

65. Infare is aware of Southwest's prohibition against scraping of fare information and knowingly misrepresents its identity in order to bypass Southwest's technological measures to prevent such conduct.

66. Southwest relied on Infare's misrepresentations and granted access to proprietary fare and flight information which Infare scrapes and subsequently uses for its own commercial purposes.

67. Southwest has been and continues to be injured by Infare's unlawful acts and is entitled to damages.

### Seventh Cause of Action
### (Unjust Enrichment)

68. Southwest repeats and realleges the material facts in the preceding paragraphs.

69. Infare and Chris Buckingham have benefited from Southwest through their unlawful activities, as alleged elsewhere in this complaint, by profiting off of Southwest's proprietary information in direct violation of Southwest's Use Agreement.

70. Southwest has been and continues to be injured by Infare's and Chris Buckingham's unlawful acts and is entitled to damages.

71. Southwest has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Infare and Chris Buckingham. Accordingly, Southwest is entitled to injunctive relief.

### Attorney Fees

72. Southwest has been required to retain the services of the undersigned attorneys in the prosecution of this claim. Pursuant to at least §§ 38.001 and 143.002 of the Texas Civil Practice and Remedies Code, Southwest seeks to recover its reasonable attorney fees and costs necessarily expended in prosecuting this matter.

### Exemplary Damages

73. Defendants' misconduct, described above, has been willful, intentional, and malicious, and Southwest seeks exemplary damages.

### Prayer for Relief

For these reasons, Southwest respectfully requests that this Court grant the following relief:

a. Adjudge that Infare has violated 18 U.S.C. § 1030 and caused damage of at least $5,000 in a one-year period;

b. Adjudge that Infare has intentionally violated § 33.02 of the Texas Penal Code, rendering them liable under § 143.001 of the Texas Civil Practice and Remedies Code;

c. Adjudge that Infare has breached the express terms of Southwest's Use Agreement;

d. Adjudge that Infare has committed a trespass to the Southwest Websites;

e. Adjudge that the Defendants have conspired to unlawfully access and extract data from the Southwest Websites without authorization;

f. Adjudge that Infare has defrauded Southwest to its detriment;

g. Adjudge that Infare and Chris Buckingham were unjustly enriched from their unlawful acts with respect to Southwest;

h. Issue preliminary and permanent injunctive relief against Defendants, that they and their officers, agents, representative, servants, employees, attorneys, successors, assigns, and any and all others in active concert or participating with them, be enjoined from:

   i. Accessing, searching, using and scraping in any way the Southwest Websites, without authorization from Southwest, or in any manner that violates the Use Agreement, or constitutes trespass to the Southwest Websites, including for the purpose of updating Defendants' software;
   ii. Accessing Southwest's protected computers without authorization, and transmitting any program, information, code, or command, which causes damage to Southwest; and
   iii. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to above, including selling, licensing, or otherwise providing to any person or entity any software, including updates to existing software, which includes information from Southwest Websites, which is capable of accessing the Southwest Websites, or which facilitates the unauthorized access or use of Southwest's proprietary data.

i. Award Southwest damages in an amount adequate to compensate Southwest for Defendants' illegal conduct;

j. Award Southwest both the costs of this action and the reasonably attorney fees incurred by it in prosecuting this action; and

k. Award such other relief as the Court may deem appropriate and just under the circumstances.

August 26, 2010                                Respectfully submitted,

<div style="margin-left: 2em;">

/s/ Max Ciccarelli
-------------------
Max Ciccarelli (Attorney-in-Charge)
  State Bar No. 00787242
  Max.Ciccarelli@tklaw.com
Vishal Patel
  State Bar No. 24065885
  Vishal.Patel@tklaw.com

THOMPSON & KNIGHT, LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: 214.969.1700
Fax: 214.969.1751

ATTORNEYS FOR PLAINTIFF
SOUTHWEST AIRLINES CO.

</div>